Washburn, J.
Demurrers to indictment.
At the April term, 1907, of the Court of Common Pleas of Lorain County, Ohio, twenty-three individuals and one corporation were jointly indicted under Section 4427-1 et seq., known as the Valentine anti-trust law, for combination in restraint of trade. The indictment contains four - counts, each charging the offense in identical language, but on different dates, the-charge being that the defendants— • '•
*338 “Unlawfuly did conspire, combine, confederate, agree and associate themselves together to create and carry out restrictions in the trade, business and commerce of insuring property against loss and damage by fire, lightning and tornado, and to increase the price, premium and rate of such insurance, and to prevent competition in the making, sale and purchase of such insurance and to fix the price, premium and rate of such insurance at a standard and figure, whereby its price to the public and to the consumer, shall be established and controlled, in that the price, premium and rate of such insurance shall be maintained as fixed, and to make, enter into, execute and carry out contracts, obligations and agreements to keep and maintain the price of such insurance at a graduated figure, to not sell or dispose of such insurance below a common standard and fixed value, to establish and settle the price of such insurance between themselves and between themselves and others, so as to preclude a free and unrestricted competition. among themselves in the sale thereof, and to pool, combine and unite their interests in the sale of such insurance so as to affect the price thereof; and that they [naming the defendants] then and there unlawfully acted with, were members of, aided and assisted in carrying out the purposes of, said unlawful trust and combination, the exact name of which is to the grand jurors unknown, then and there being and existing for each and all of the aforesaid unlawful purposes and which said trust and combination did then and there unlawfully bring about, effect and accomplish each and all of the aforesaid purposes, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Ohio.”
To this indictment the defendants have each, with one exception, interposed a demurrer, upon several grounds, the principal ground being that the facts stated do not constitute an offense punishable by the laws of the state of Ohio..
The principal question presented by the demurrers is, whether or not the business of fire insurance is included in the terms “trade,” “commerce”- or “commodity” as the same are used in the Valentine law. The object of that law, as stated in its title, is “to promote free competition in commerce and all classes of business -in the state. ’ ’ Section 1 -declares tfiat—
' “A trust is a combination of capital, skill or acts by two or more persons, fix-ms, partnerships, corporations or associations-of persons, or any two or more of thexn, f'or either, any or all' of the following pux-poses:
*339 “1. To create or carry out restrictions in trade or commerce.
“2. To limit or reduce the production, or increase, or reduce the price of merchandise or any commodity. ■
“3. To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.
“4. To fix at any standard or figure, whereby its price to the public or consumer shall be in any'manner controlled or established, any article or commodity of merchandise, produce or commerce intended for-sale, barter, use or consumption-in this state. .
“5. To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by' which they shall bind or have bound themselves not to sell, dispose of or transport any article or any commodity or any article of trade, use, merchandise, commerce or consumption below a common standard figtire or fixed value,' or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed of graduated figure, or by which they shall in any manner establish or settle the price of any article, commodity or transportation between them or themselves and others, so as to directly or indirectly preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale or transportation of any article or commodity, or by which they shall ágree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any article or commodity, that its price might in any manner be affected. Every such trust as is defined herein is declared to be unlawful, against public policy and void.”
Without stopping to quote the definitions of the word “commodity” as given by lexicographers, it is sufficient to say that the word as commonly used and understood means something movable and tangible. It is true that the word “commodity” in its broad sense is said to mean “convenience, accommodation, profit, benefit, advantage,’ interest, commodiousness,” but its use in that sense has become obsolete. In that sense it can not be said to be a thing that can be produced, used ..or transported, and the acts in question, as shown by reference to the terms used-in Subdivisions 2, 3, 4 and 5 of Section 1, refers to things that can be “produced,” “manufactured,” “made,” “transported,” “sold,” “used” or “consumed”; hence I think that the word “commodity” was used in this act in its ordinary and well-under *340 stood commercial sense of something that is produced or used, and is the subject of barter or sale, something movable and tangible. In the opinion of the case cited hereafter, Paul v. Virginia, 75 U. S. (8 Wall.), 168, it is said that contracts of insurance are not commodities. I will later refer to an Iowa case which decides that insurance is a commodity.
The word “commerce,” as ordinarily used, has to do with the sale or transportation of commodities or tangible and movable things, but it is a term of wide import, and it includes communications and intercourse for the purpose of trade in any and all its forms, and yet the Supreme Court of the United States, by repeated decisions, has held that—
“The issuing of a policy of insurance is not a transaction of commerce — -but is a simple contract of indemnity against loss.” Paul v. Virginia, supra.
Mr. Justice Field, in deciding this case, uses this language:
“These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another, and then put up for sale. They are like other personal contracts between parties which are completed by their signature and the transfer of the consideration. ”
In 1895 the Supreme Court of the United States reiterated this doctrine in the following language:
“The business of insurance is not commerce. The contract of insurance is not an instrumentality of commerce. The making of such a contract is a mere incident of commercial intercourse, and in this respect there is no difference whatever between insurance against fire and insurance against the ‘perils of the sea.’ ” Hooper v. California, 155 U. S., 648, 655.
And the same court again, as late as 1900, specifically decided that “the business of life insurance is not commerce.” New York Life Ins. Co. v. Cravens. 178 U. S., 389.
So far as I know, no court has decided to the contrary, and I, ■therefore hold that the word “commerce,” as used in the act in question, does not include the business of fire insurance.
*341 The word “trade” is ordinarily understood as meaning one’s occupation or employment, or else, the business of buying and selling. In the latter sense.it is of no wider import than “commerce” or “traffic,” for “trade,” in the sense of “exchanging commodities by barter, the business of buying or selling for money,” has to do with movable and tangible things.
In the exemption laws of certain states the'word “trade” is used in the broad sense of occupation or employment, and in the state of Texas, where the .law exempted from attachment and execution all tools, apparatus and books belonging to “any trade or profession,” the words “any trade or profession” were construed to include all employment and to include the “business of an insurance agent so as to entitle him to the exemption therein provided for. Betz v. Maier, 12 Tex. Civ: App., 219.
In its broadest sense the word “trade” applies not only to skilled handicraft, but to any business tha.t a man regularly engages in for a livelihood. If this broad meaning was intended, then the law applies to practically all business affairs, not. only to the production, consumption, use, sale and transportation of tangible things, but to all cases where any occupation or employment is engaged in for the purpose of profit or gain, or a livelihood, except the learned professions. In this broad sense it would include the occupation of the mechanic, the laborer, the agent, clerk or servant and all those who are employed for hire, except the lawyer, doctor, minister and those engaged in . the liberal arts.
If that is the sense in which the word “trade” is used in this act, then it is made a criminal offense for two men to agree with .each other not to work for less than two dollars per day. That construction would render illegal all that class of unions and combinations of workingmen and tradesmen which are unqualifiedly recognized to be lawful and which have been encouraged and protected by the state. That men can combine for the purpose of regulating their wages by proper means, is now the settled law of the land; and such a combination was held not to be made -criminal by a law very similar to our anti-trust law. Hunt v. Co-operative Club, 140 Mich., 538.
Before giving to the Ohio statute a construction which will render criminal all combinations of laboring men, the court *342 should be satisfied that such was the intention ’of the Legislatur^.
It has been suggested that this statute applies only to such combination as were illegal at common law, and that such construction would exclude labor combinations and include insurance combinations, but that construction would render the law very indefinite and uncertain, for many combinations are legal at common law, .and but few people know what combinations are legal and what are illegal at common law. In fact, few attorneys without research and study know just what combinations are upheld and enforced and what are illegal and unenforeible under the common law. In Ohio an act is not criminal unless made so by statute, and the statute should describe the act which .;_is forbidden with reasonable certainty, and where a word which has two significations is used in a statute, it should ordinarily receive that meaning which is generally given to it.
It will be noticed that the word “trade” is used just twice in Section 1 of the act hereinbefore quoted — in Subdivision 1, where “restrictions in trade” are spoken of, and in Subdivision 5, where reference is made to “any commodity or any article of trade, use, merchandise, commerce or consumption.” It is apparent that as used in Subdivision 5 the word “trade” has reference to something movable and tangible.
Throughout the act, terms are used which clearly indicate that the Legislature had in mind concrete things which could be produced, transported, used or consumed. The language of Subdivision 4 is: “any article or commodity or merchandise, produce or commerce intended for sale, barter, use or consumption in this state. ’ ’ To say that this language describes such an intangible thing as a contract of indemnity by which one person insures the property of another against loss by fire, is certainly to disregard the ordinary meaning of words.
That the terms “merchandise, product, or any commodity” were not intended to include intangible things, is shown by the fact that the Legislature took particular,pains to mention “transportation” among the list of things.; which might be the subject of a trust, thus evidently not intending,, to include such an intangible thing as transportation, within the definition of such tangible things as “article” or “commodity.”
*343 The transportation of 'an article is as much trade as is the insurance of ah.article, and as combinations for the purpose of preventing competition in the transportation of an article are specially prohibited in Subdivision 3 of Section 1, it is evident that the Legislature did not iptend to include transportation in the word “trade” as used-in Subdivision 1, or the word “merchandise” ot “commodity” as used in■ Subdivision 2, or the words “merchandise, product, or any commodity” as used in Subdivision 3, thus showing that the word “trade,” as used in Subdivision 1, was not used in its broadest sense, but rather in the sense of barter and sale. .
If the term “restrictions in trade,” as used in the first subdivision is given its broadest and most comprehensive meaning, it includes all that is. thereafter described in Subdivisions 2, 3, 4 and 5, and much that is* not included in said subdivisions; hence, if it had been used in this broad sense, there was no need for' the specific restrictions contained in Subdivisions 2, 3, 4 and 5 — they were included and covered in Subdivision 1. Indeed, it seems quite apparent that Subdivision 1 is explained by Subdivisions 2, 3, 4 and 5, and that “trade” as there used has reference to'the business of selling or exchanging some tangible substance or commodity for money; at least, it does not clearly appear that it was used in its broadest and most comprehensive sense.
This is a criminal statute and must b'e strictly (State v. Meyers, 56 Ohio St., 340, 350) but fairly (Barker v. State, 69 Ohio St., 68) construed, and any reasonable doubt that there may be should be resolved in favor of the defendants. In construing a statute the court has a right to consider the history of the legislation, the cause or necessity for it, its object and what appears best calculated to advance the same, for the purpose of determining what the intent of the Legislature was in enacting the law. The history of the law in question shows that the necessity for it grew out of the fact, that there had been great combinations of corporations and capitalists for the purpose of controlling the price of tangible things — articles of prime necessity — or the charges for the transportation of the same, and that the stale of Texas, long before the Ohio law was passed, had enacted a law very similar to what is now the Ohio law; in fact, the Ohio law *344 is almost a literal copy of the Texas law, and before the Ohio law was passed the supreme court of Texas had decided 'that the Legislature did not intend, in the use of the terms “restrictions in trade,” “commerce” and “commodity,” to include the business of fire insurance. Queen Ins. Co. v. State, 86 Tex., 250 (24 S. W. Rep., 397). Then the Legislature of Texas amended the law so as to include the business of insurance, and thereafter the Legislature of Ohio enacted the law in question, following, except as to title, practically the original Texas statute, and specifically omitting the provision in the amended Texas statute which brought the business of insurance within the terms of the statute. The title to the Texas statute states that the law was passed “to promote free competition in the state of Texas,” while the Ohio statute recites that it is an act “to promote free competition in commerce and all classes of business in the state. ’ ’
But for this difference in the title of the Ohio statute the conclusion that the Legislature of Ohio intended to enact a law which did not include insurance, is irresistible, and, considering the kind and character of the combinations which brought about the necessity for the legislation, I can not give to the change in the title of the Ohio act a force and effect which would overcome the intention not to include the business of insurance in the act which is shown by the deliberate omission from the body of the law of the provision in reference to insurance.
The title of the act is proper to be considered in determining the intention of the Legislature in enacting the law, but it can not be given controlling force in a criminal statute so as to give words of the law itself a meaning repugnant to that which, but for the title, is apparent from a consideration and fair construction of the law itself. Bennett v. Lewis, 7 Ohio (pt. 1), 80, 86; Seeley v. Thomas, 31 Ohio St., 301, 306; Sutherland, Statutory Construction, Section 339.
The statute of Ohio is, as I have said, practically indentical with the first Texas act, and the rule is, that where our Legislature adopts the law of another state, it does so intending that it shall receive the same construction by the Ohio courts that had been put upon it, up to the time of'its enactment in Ohio, by the courts of the state from which - it is- adopted.
*345 “When a statute is taken principally from the statute of another state and prior to its adoption had received a construction in that state, it is reasonable to suppose that the Legislature in adopting this provision did so in view of the construction which had been put upon it and with the intention that it should receive the same construction here.” Favorite v. Booker, 17 Ohio St., 548; see also Ives v. McNicoll, 59 Ohio St., 402, and Gale v. Priddy, 66 Ohio St., 400.
Having in mind that this is a criminal statute, a careful reading and consideration of the whole act leads me to the conclusion that the words in question were used in their ordinary and commonly-understood meaning, and not in their obsolete or unusual meaning, and that the Legislature intended the act to apply to tangible things, their manufacture, making, production, transportation, sale or purchase, and that it did not intend the law to apply to insurance. Runck v. Cloud, 8 N. P., 436.
I have not overlooked a case reported in State v. Phipps, 50 Kan., 609 (31 Pac. Rep., 1097), but that merely holds that where insurance was specifically mentioned in -the body of the law it indicated a legislative intention to use the word “trade” in the title of the act in a sense broad enough to include the business of insurance. Neither does the ease reported in State v. Insurance Co., 152 Mo., 1 (52 S. W. Rep., 595), apply to the case at bar, because the law in that case especially mentioned and prohibited combinations of those engaged in the insurance business.
Counsel insist that this court shordd follow the supreme court of Iowa, where it is held that the word “commodity” in a somewhat similar statute included the business of fire insurance. That statute prohibited combinations “to regulate or fix the price of oil, lumber, coal, flour, provisions, or any other commodity or -article whatever,” and the Supreme Court of Iowa held that the business of fire insurance was included in the term “any other commodity or article whatever”; but in so deciding the court violated a well-settled rule of construction, which is, ‘ ‘ general words following particular and specific words must, ordinarily, be confined to things of the same kind as those specified.” Shultz v. Cambridge, 38 Ohio St., 659.
• Here the words ‘ oil, lumber, coal, flour and provisions ’ ’ all refer to tangible and movable things, and the word “eommod *346 ity,” while including all of them, embraced many other things of the same general knid, and under the above rule the word “commodity” applied only to things like oil, lumber, etc., which were tangible and movable. In spite of that, the court gave to the word “commodity” an obsolete and unusual meaning and held that it included the business of insurance, because “there are the same reasons why it should be protected against combinations as there are in matters clearly within the provisions of the law.” The court recognized the fact that the business of insurance was not clearly within the provisions of the law, but seemingly held that it ought to be, and therefore was included. I do not regard the case as authority, for in Ohio “a statute defining a crime or offense can not be extended, by construction, to persons or things not within its descriptive terms, though they appear to be within the reason and spirit of the statute.” State v. Meyers, supra.
There may be good reasons why combinations by insurance agents for the purpose of increasing rates of insurance should be prohibited, but that will not justify a court in holding that such combinations are prohibited by a law which prohibits combinations with reference to articles which may be produced, transported and used and which are the subject of barter and sale.
If it is thought wise to extend the provisions of the anti-trust law of Ohio so as .to include the business of insurance, labor unions and everything about which a person may be engaged, the Legislature can very easily use language which will clearly express that intention, but it is sufficient for the determination of this case to say that such intention does not clearly appear from a consideration of the present law.
Before an act can be held to be criminal in Ohio it must clearly appear that the Legislature intended to make that act criminal.
“It must be borne in mind that we have no common-law offenses in this state. No act or omission, however hurtful or immoral in its tendencies, is punishable as a crime in Ohio, unless such act or omission is specifically enjoined or prohibited by the statute laws of the state. It is, therefore, idle to speculate upon the injurious.consequences of permitting such conduct to go unpunished, or to regret that our criminal code has not the expan *347 siveness of the common law.” Smith v. State, 12 Ohio St., 466, 469.
F. M. Stevens, Prosecuting Attorney, for plaintiff.
Stroup & Fauver and Thompson, Glitch & Cinniger, for de-
The demurrers will, therefore, be sustained and the defendants discharged.