## SUNSHINE BUS LINES, Inc., v. AMERICAN FIDELITY & CASUALTY CO., Inc. *

### No. 7415.

Circuit Court of Appeals, Fifth Circuit.

Feb. 15, 1935.

*Rehearing denied March 27, 1935.

George S. Wright, of Dallas, Tex., for appellant.

Neth L. Leachman, of Dallas, Tex., for appellee.

Before FOSTER, SIBLEY, and HUT-CHESON, Circuit Judges.

FOSTER, Circuit Judge.

Appellee brought suit to collect unpaid premiums on four policies of insurance issued to appellant and recovered judgment in the sum of $4,161.69. There is no dispute as to three of the policies. Errors assigned all run to the direction of a verdict in the amount for which judgment was entered.

The record supports the following conclusions as to the material facts. Appellant is a public carrier owning and operating a fleet of automobile busses. It was required by law to carry insurance against loss from liability arising from bodily injury or death to persons and damage to or destruction of property. Appellee wrote two policies of insurance for appellant covering these risks. The first policy was dated December 28, 1931, and the renewal of this policy was dated December 28, 1932. The policies were written on the annual premium basis at flat rates, but the insured was permitted to make payments monthly on account of premiums. Appellee paid claims under the policies, the amount of which is not shown.

The insurance commission of Texas is authorized to fix rates for insurance and its rules provide that experience data must be submitted as to each particular risk, based upon which the rates may be readjusted and either raised or lowered. The cancellation of policies to escape a change of rate is forbidden and policies are required to run for one year only. A policy may not be canceled except after 30 days' notice to the commission. Rule 65 of the insurance commission, so far as material, provides: "All automobile risks, meeting the requirements prescribed herein, must be submitted annually for experience rating. The experience rating plan applies only to public liability and property damage coverage and operates only from the natural expiration date of a policy, or, if a risk is covered by more than one policy, from the date of the first expiring policy, after the date of submission."

The method adopted by the commission in adjusting rates is to order a debit to be added to the rate named in the policy to raise it or a credit to be deducted to reduce it. Experience data was submitted and the commission ordered debits as to the policy issued December 28, 1931, which are not now material, and on December 8, 1932, ordered a debit of 10 per cent. of the public liability rate with a credit of 15 per cent. of the property damage rate, effective for one year beginning December 28, 1932. Under the law, either the insurance company or the insured had the right to appeal to a court of competent jurisdiction to review the action of the commission. This was not done. The renewal policy, issued December 28, 1932, stipulated for an annual premium of $8,663.67, allocated $7,267.83 to public liability and $1,-395.84 to property damage liability. The debit and credit resulted in a net increase of $517.40 in the annual rate. Appellant made payments in February, March, and May, 1933, aggregating $2,270.40.

A. W. Riter was president and general manager of the Sunshine Bus Lines, Inc., appellant, and also of the Dixie Motor Coach Corporation, engaged in the same business, and for which corporation appellee had also written policies covering the same risks, and as to which debits had also been allowed. He was advised by one Awtry, through whom the insurance had been placed, but who was not then connected with appellee in any capacity, that appellee intended to apply the debits and credits to the existing policies. He then wrote a letter to the insurance commission on May 18, 1933, after the last payment on account of premium, canceling the policies. This became effective thirty days thereafter or on June 18, 1933. At that time no demand had been made upon appellant for payment of the increase in rates. The policy provided

for cancellation on 30 days' notice by either party and that, if canceled by the assured, a short rate would be charged, according to a schedule in the policy. When the policy was canceled it had been in force 172 days. According to the schedule, the short rate would be 65 per cent. of the annual premium. This was in conformity to the rules of the insurance commission. Riter, representing both appellant and the Dixie Company, applied to the Commission for cancellation of the debits and credits previously ordered and asked for their suspension pending a hearing. The commission declined to suspend the new rates, but ultimately on February 14, 1934, after this suit was entered but before trial, set aside the debits allowed as to the policy dated December 28, 1931, but left in force the debit and credit ordered as to the renewal policy issued on December 28, 1932. At the trial, appellee abandoned its claim on the first policy issued December 28, 1931. The premium claimed on the renewal policy was 65 per cent. of the annual rate after adding and deducting the debit and credit allowed by the commission. Judgment was entered on that basis.

The authority of the insurance commission to regulate rates is not challenged, but it is contended by appellant that the debit and credit allowed by the commission could not be effective until after the termination of the policy dated December 28, 1932, therefore, could not be applied to the rates therein named. It is further contended that the policy had been written for a flat rate and applying the debit and credit was a breach of contract by the insurer, warranting the cancellation of the policy by the insured, in which event only a pro rata of the flat rate could be charged.

While the rule above quoted is somewhat ambiguous, the commission, having made it and having the right to change it, was in the best position to interpret it. The experience data was submitted to the commission before the second policy became effective. The only purpose of submitting it would be to permit the commission to use it in fixing rates for that policy. The first policy was in force when the data was submitted, and the ultimate ruling of the commission made the new rate effective only after it expired. The interpretation of the commission was reasonable and fair.

It is settled that a state may regulate insurance to the extent of fixing rates. German Alliance Ins. Co. v. Lewis (German Alliance Ins. Co. v. Superintendent of Ins. of State of Kansas), 233 U. S. 389, 34 S. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189. Valid provisions of a state law enter into and become part of a contract of insurance. New York Life Ins. Co. v. Cravens, 178 U. S. 389, 20 S. Ct. 962, 44 L. Ed. 1116; Hanover Fire Ins. Co. v. Dallavo (C. C. A.) 274 F. 258; Great Southern Life Ins. Co. v. Jones (C. C. A.) 35 F.(2d) 122; New York Life Ins. Co. v. Rositzky (C. C. A.) 45 F. (2d) 758. Neither party could rely upon the rates stipulated in the policy as they were subject to change by the commission. Under the law, appellee was obliged to charge the rates fixed by the commission and no other. There was no breach of contract on the part of the insurance company warranting cancellation of the policy by the assured.

The record presents no reversible error.

Affirmed.