## Federal Materials Co. v. Williams-Detwiler Co.

(Decided June 18, 1935.)

DOOLAN & DOOLAN and R. P. SMITH for appellant.

ARTHUR GRAFTON and WOODWARD, HAMILTON & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Williams-Detwiler Company, plaintiff below, and appellee herein, hereinafter called the plaintiff, brought this suit in the Jefferson circuit court against the Federal Materials Company, hereinafter called the defendant, to recover on two notes, one for $1,000 and one for $1,400, and a check for $1,000 signed by the defendant. The action was originally brought at law, but was transferred to equity by agreement of the parties because of the multiplicity of the items involved and the complications of the accounts which were the alleged consideration of the notes. The court rendered judgment for plaintiff on the two notes and for the defendant on the check. No cross-appeal is being prosecuted by the plaintiff from the judgment denying it a recovery on the check, but defendant appeals from the judgment on the two notes.

The plaintiff is an insurance agency doing business in Louisville, Jefferson county, Ky., and the defendant is a corporation of the state of Maryland, licensed to and doing business in Kentucky, Missouri, West Virginia, and perhaps other states, with its principal office located at Cape Girardeau, Mo. It is engaged in the production of crushed rock, sand, gravel, and other building materials. It has one plant at Cape Girardeau, Mo., and another plant at Paducah, Ky.

The notes sued on represent premiums due plaintiff by defendant on insurance policies which plaintiff had procured for defendant covering its various operations and properties. Defendant filed its answer and counterclaim denying the allegations of the petition, and pleaded absence and failure of consideration for the notes and fraud in procuring them. The fraud pleaded consists of alleged false representations that for a period of several months prior to the date of the notes, plaintiff had procured and maintained in continuous force, policies of insurance covering the properties of defendant issued by reputable and responsible insurance companies. At that time defendant was indebted to plaintiff on account of such insurance in the amount of the note sued on, and the notes represented said indebtedness. It is further pleaded as its counterclaim that plaintiff had not maintained in continuous force any policies covering the properties and operations of defendants, and that such policies as were procured, were written by other than reputable and responsible companies, and pleaded breach of contract in failure to maintain such insurance as contracted between the parties and as represented to defendant by plaintiff. Defendant further alleged that it had sustained damages totaling $5,245.60 for losses sustained, which would have been covered by insurance but for the breach of the contract.

The second item of the counterclaim has no connection with the insurance transaction. Defendant alleged that the sum of $2,219.22 was deposited with plaintiff by defendant for the express purpose of paying an account due from defendant to Neare-Gibbs & Co. of Cincinnati; that demand had been made for the execution of this trust, but the plaintiff had failed and refused to pay over the money. The answer and counterclaim was controverted of record.

All the testimony offered was presented by defendant. Plaintiff offered no evidence and rested its case with cross-examination of defendant's witnesses, including Williams and Detwiler, officers and promoters of plaintiff company.

It appears that in the formation of defendant company there was a merger of certain other companies, including the Ohio Sand & Gravel Company and the

Hely Stone Company, both of which latter companies had insurance at the time of the merger, and the Ohio Sand & Gravel Company was indebted for insurance premiums on policies covering certain of its equipment. These policies had not expired at the time of the formation of defendant company, and it was agreed that part of the premiums for said insurance be charged to the new company (defendant) and part of it paid by the old company (Ohio Sand & Gravel Company). The amount charged to and assumed by defendant was $2,-219.22, and part charged to the Ohio Sand & Gravel Company was to be paid by the Baltimore Trust Company, which institution was trustee for certain bondholders. The insurance premiums due and assumed by the respective companies, as stated above, were due to Neare-Gibbs & Co. of Cincinnati. About the time of the formation of the defendant company, Neare-Gibbs & Co. brought a suit against certain equipment of the company for the purpose of collecting its premiums.

Soon after the formation of defendant company, arrangements were made for plaintiff to handle the insurance of defendant. A. J. Hoffman was interested in the insurance agency and also interested in defendant company, and took part in the negotiations in arranging the insurance. However, there is nothing in the record indicating that Mr. Hoffman did not act in good faith in negotiating the insurance deal between the respective companies. Later plaintiff made an arrangement with Neare-Gibbs & Co. to act as its agent in connecton with that part of the money ($2,219.22) due it for premiums assumed by defendant as stated above. It was agreed between plaintiff and defendant that defendant should pay to plaintiff the $2,219.22 then owing to Neare-Gibbs & Co. on condition that it be held by plaintiff and paid to Neare-Gibbs & Co. when that portion of the premium due Neare-Gibbs & Co. by the Baltimore Trust Company should be paid, and the lien of Neare-Gibbs & Co. released. Payment of the $2,219.22 was made by defendant to plaintiff and it appears that plaintiff yet holds that amount as agent for Neare-Gibbs & Co. We think the court properly refused to allow defendant a recovery on this item of its counterclaim, because under all the facts and circumstances it is obvious that plaintiff is the agent of Neare-Gibbs & Co. and is responsible to it for the

$2,219.22 which it holds and is obligated to account to Neare-Gibbs & Co. therefor. Under these circumstances payment by defendant to plaintiff was payment to Neare-Gibbs & Co. so far as defendant is concerned, and a settlement of the sum is now a matter to be adjusted between plaintiff and Neare-Gibbs & Co.

The contention that the notes were given for an illegal cause, and therefore void, is based upon the fact that the insurance complained of and alleged to be worthless was procured by plaintiff from the National Underwriters or Southern Underwriters, a corporation of South Dakota, which company had no license to engage in the insurance business in the state of Kentucky, and the notes sued on embraced an account of a debt of $1,185 owing to the said unlicensed company for premiums. It is further charged that the unlicensed company refused to adjust losses, defend suits, or otherwise attend to matters within the terms of the policy, because defendant refused or had failed to pay its premiums.

According to the evidence of Williams and Detwiler, the plaintiff presented and offered to defendant two lines of insurance. It appears that the insurance accepted by defendant procured from the National Underwriters was 30 per cent. cheaper than the other line offered. It also appears from the evidence of Mr. Wells, secretary and treasurer of defendant company, that it accepted the insurance offered by the National Underwriters because it was cheaper. Mr. Wells testified that he never understood that plaintiff was in any way guaranteeing the solvency of any of the companies. He said that they had choice and accepted the one that was 30 per cent. cheaper. He further said that plaintiff gave them all the information they asked in connection with all the companies. He further stated:

"I think that the only reason we got into that thing was due to the fact we wanted that 30% reduction."

He was asked:

"Q. You haven't any idea that Williams-Detwiler Company concealed from you any material facts in connection with the insurance, have you? A. No, I think they told us everything that we asked them."

It is admitted by defendant that it was unable to pay its premiums and on various occasions the insurance companies notified it that they were contemplating or had canceled their insurance. But it is also shown that upon receipt of such notice defendant communicated with plaintiff and through the efforts of plaintiff the insurance was kept in force and the threatened cancellations were never carried into effect. With respect to the solvency of the insurance company, there is no showing that it was insolvent; but to the contrary, it is shown that this company is still paying claims, and there is no showing that the insurance company refused to pay any claim properly proven and presented by defendants.

With respect to the claim that plaintiff represented to defendant that the insurance procured was in reputable and responsible companies, the evidence is conflicting. Williams and Detwiler both testified that they made no such representations, and they are corroborated by defendant's witness Wells, who stated that plaintiffs never in any way guaranteed the solvency of any of the companies, and that defendant selected the insurance offered by the National Underwriters because it was cheaper. The evidence is sufficient to sustain the chancellor in finding that there was no fraud or misrepresentations on part of plaintiff.

We now come to a consideration of the question whether or not the notes were void because they were given in consideration for premiums due an insurance company which had no license to engage in the insurance business in the state of Kentucky, and some of the property insured was located in Kentucky. The evidence is somewhat conflicting as to where the negotiations for insurance were had and concluded, but the preponderance of the evidence conduces to show that the insurance was contracted at defendant's home office at Cape Girardeau, Mo., which, it is admitted, is the home office of defendant, and the policies were delivered and accepted at that office. Thus, we have the situation of a South Dakota corporation insuring the property of a Maryland corporation with its principal office and place of business located in the state of Missouri. It is admitted that the insurance company involved was not licensed to do business in Kentucky or Missouri. But as pointed out by the chancellor in his opinion filed

with the record, that in the absence of pleading and proof of the Missouri statute, that whether or not the company was licensed in Missouri is entirely immaterial, as the court in such a state of the record must presume that the common law of Missouri is the same as our common law, and that thereunder an insurance company had a right to do business in Missouri without a license. The Missouri court has held that no presumption of the insolvency of a foreign insurance company arises from the fact that it has not been authorized to do business in that state. Jones v. Horn, 104 Mo. App. 705, 78 S. W. 638.

Sections 631 and 634, Kentucky Statutes, are intended only to control the transaction of business in this state by foreign insurance companies, and, inasmuch as the policy was contracted for and delivered in the state of Missouri, it is immaterial whether or not the company had a license to do business in Kentucky, unless it is because of the fact that some of the property insured was located in Kentucky. In Connor et al. v. Excess Ins. Co. of America (C. C. A.) 51 F. (2d) 626, it was held that a policy of insurance written by a New Jersey insurance company for a partnership composed of citizens of Missouri, indemnifying such partnership against liability risks in connection with work being performed by the partnership in North Carolina, was a Missouri contract and therefore governed by the laws of Missouri, and citing Equitable Life Assur. Soc. v. Pettus (Equitable Life Assur. Soc. v. Clements) 140 U. S. 226, 11 S. Ct. 822, 35 L. Ed. 497; New York Life Ins. Co. v. Cravens, 178 U. S. 389, 20 S. Ct. 962, 44 L. Ed. 1116; Northwestern Mut. Life Ins. Co. v. McCue, 223 U. S. 234, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57.

In Mack v. Liverpool & London & Globe Ins. Co., 329 Ill. 158, 160 N. E. 222, 57 A. L. R. 1039, it is held that a contract of insurance operates to the parties thereto and not to the thing which is subjected to the risk.

In Ætna Life Ins. Co. v. Dunken, 266 U. S. 389, 45 S. Ct. 129, 69 L. Ed. 342, and in numerous other cases, it is held that a state cannot forbid contracts of insurance relating to risks within its limits from being made between a citizen and a corporation of another

state, because an attempt of that kind would be unlawful invasion of the citizen's liberty of contract under the Fourteenth Amendment.

It is our conclusion, therefore, that the insurance here involved being contracted between defendant company, a corporation of Maryland, and the insurance company, a corporation of South Dakota, is not invalid because a part of the property subjected to risk was located in Kentucky.

Perceiving no error, the judgment is affirmed.