[L. A. No. 184. In Bank.—February 23, 1898.]

R. W. PIERCE, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

COMMON CARRIERS—LIMITATION OF OBLIGATIONS—PRESUMPTION AS TO LAW OF ANOTHER STATE.—In the absence of proof, it is to be presumed that the law of another state upon the subject of the limitation of the obligations of common carriers is the same as that prescribed in sections 2174 and 2175 of the Civil Code of this state.

ID.—STIPULATION LIMITING LIABILITY—CONSTRUCTION—NEGLIGENCE—ORDERING ORANGE TREES SHIPPED BY NORTHERN ROUTE—LOSS FROM FREEZING. A stipulation in a shipment of orange trees from Florida, by the terms of which the shippers insured the railroad lines "against claims by loss or damage which may be incurred by reason of delay in transportation, or any other cause arising out of responsibility as master over its agents or servants (gross or wanton negligence excepted) incident to said shipments," whatever may be its import as to the exception of gross or wanton negligence, cannot be held to mean anything more than that the railroad company was not to be liable for the mere negligence or misconduct of its agents and servants, and cannot be construed as extending to or embracing loss or damage caused solely by compliance of its agents and servants with an order of the railroad corporation itself directing them to ship the orange trees from Florida over a northern route through Utah and Nevada, as the result of which they were frozen in transit.

ID.—LIMITATION OF LIABILITY AS TO DAMAGE—INVOICE—PRICE AT PLACE OF SHIPMENT—CONSTRUCTION—ABSENCE OF INVOICE—VALUE OF TREES—MEASURE OF DAMAGES.—The ordinary measure of damages for breach of a carrier's obligation is the value of the goods at the time and place of delivery; but this liability may be limited by special contract, and where there is a special contract making the invoice price of trees at the point of shipment the measure of damages, such contract must receive a reasonable construction, and where no' invoice price was actually made out and agreed upon, that expression must be understood as indicating the actual value of the trees at the point of shipment, when loaded and ready for transportation. To this is to be added the freight actually paid and interest on the whole amount.

ID.—STATUTE OF LIMITATIONS—FOREIGN CORPORATION—ABSENCE OF PROOF AS TO DESIGNATION OF AGENT.—Where the pleadings admit that the defendant railroad company was a corporation organized under the laws of another state, and engaged in the business of operating a railroad as a common carrier in this state, in order to avail itself of a plea of the statute of limitations, it must prove a compliance with the act of 1872 in relation to foreign corporations requiring the designation of a suitable person upon whom process might be served to be filed in the office of the secretary of state, and, in the absence of such proof, the court may properly find against the defense of the statute of limitations.

Id.—Shipment of Orange Trees—Knowledge of Contents—Bill of Lading—Marking of Cars.—Although the printed part of a bill of lading used the expression "contents unknown," yet where the written description in each bill of lading designated the shipment in writing as "1 car orange trees," and the cars were marked on the outside with the names and residence of the consignees, and the words "orange trees" marked in large plain letters, and each car had open ventilators at each end, affording an opportunity to see and examine the contents, the carrier must be held to have known the contents of the cars, or to have had the means of knowledge at hand.

Id.—Duty of Carrier as to Direct and Customary Route—Liability for Deviation.—It is the duty of the carrier to transport the goods by the usual direct route, and if a deviating route chosen is not customary, and there are special reasons making it unsafe, the carrier is liable for any resulting loss.

Id.—Obstruction of Direct Route by Stress of Weather.—Duty of Carrier.—Where there is an obstruction of the direct and customary route through stress of weather, it is the duty of the common carrier to hold the goods until that or some safe avenue is opened, or to notify the consignors or consignees and take their directions; and where orange trees are shipped marked in such a way as to give notice to the carrier as to how they should be carried for safety, such marks must not be disregarded, and the failure of the carrier to furnish either of the foregoing courses, and its action in shipping the trees over a deviating northern route, upon which they might be reasonably expected to be frozen, and were frozen, the carrier is liable for the resulting loss.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. John L. Campbell, Judge.

The facts are stated in the opinion rendered in Department One.

A. B. Hotchkiss, for Appellant.

J. S. Chapman, and Curtis, Oster & Curtis, for Respondent.

THE COURT.—The facts of this case are fully stated in the subjoined opinion of Department One. When that opinion was filed both parties petitioned for a rehearing in bank, the appellant insisting that it had proved a valid contract exempting it from all liability, and the respondent contending that the rulings of the lower court with reference to the measure of damages were correct. For the purpose of further considering these two questions a rehearing was granted.

Sections 2174 and 2175 of the Civil Code read as follows: "Sec. 2174. The obligations of a common carrier cannot be limited by general notice on his part, but may be limited by special contract."

"Sec. 2175. A common carrier cannot be exonerated, by any agreement made in anticipation thereof, from liability for the gross negligence, fraud, or willful wrong of himself or his servants."

In the absence of proof we presume that the law of Florida is the same. The contract in question here, which was executed in Florida, contains the following stipulation:

"Now, therefore, said shippers, for themselves and consignees, do hereby insure said Florida Midland Railway Company, and all lines over which said shipments may pass between points of shipment and destination, against claims by loss or damage which may be incurred by reason of delay in transportation, or any other cause arising out of responsibility as master over its agents or servants (gross or wanton negligence excepted), incident to said shipments."

The appellant contends that it was empowered by section 2175 of the Civil Code to contract for an exemption from all liability except for gross negligence, fraud, or willful wrong of itself or servants; that such contract, based upon a valid consideration, was entered into in its behalf with the respondent, and that it was clearly shown, and conceded by the court, that it was not guilty of gross negligence.

When section 2175 of the Civil Code was enacted section 17 of the same code read as follows:

"There are three degrees of negligence:

"1. Slight—which consists in the want of great care and diligence; 2. Ordinary—which consists in the want of ordinary care and diligence; 3. Gross—which consists in the want of slight care and diligence."

In 1874 this section was repealed outright, and the effect of this repeal upon the construction and operation of section 2175 is one of the questions which has been argued on the rehearing. It is not necessary, however, to decide this question, for conceding that the distinction between gross and ordinary negligence still obtains so far as stipulations for exemption in

contracts of common carriers are concerned, we do not consider this a case for the application of the doctrine.

The loss and damage for which plaintiff sues was not for delay in transportation, and the exemption from liability claimed by the defendant must be based upon the general words: "Or any other cause arising out of responsibility as master over its agents or servants," etc.

This language, which is of very doubtful and ambiguous meaning, must be construed most strongly against the defendant, and even under a less exacting rule could not be held to mean anything more than that the railroad company was not to be liable for the negligence or misconduct of its servants or agents. But in this case it is clearly shown that the loss and damage complained of was solely due to compliance by the agents and servants of the defendant with an order emanating from headquarters—that is to say, an order issued by the corporation itself through its proper organs. This order embraced all freight east of a certain point, including these cars loaded with orange trees, which, as a matter of common knowledge, are easily killed by that degree of cold which, as a matter equally of common knowledge, they would be likely to encounter at the end of February on the route over which they were transported.

Our conclusion upon this point is that the stipulation in this contract, allowing it to be valid, does not extend to or embrace the act of the corporation in ordering these trees shipped through Utah and Nevada.

As to the point made by respondent in his petition for a rehearing, we are satisfied that the conclusion reached by the Department was correct.

The ordinary measure of damages for breach of a carrier's obligation to deliver freight is the value of the goods at the time and place of delivery (Civ. Code, sec. 3316), but this liability may be limited by special contract (Civ. Code, sec. 2174), and here there was a special contract signed by the plaintiff making the invoice price at the point of shipment the measure of damages. It is true there was no invoice price actually made out and agreed upon at the time the trees were shipped, but this clause cannot for that reason be treated as meaningless and inoperative. It should receive a reasonable construction, and the

most reasonable construction of which it is susceptible is that by invoice price was meant the actual value of the trees at the point of shipment when loaded and ready for transportation. To this, of course, is to be added in fixing the damages the freight actually paid and interest on the whole amount.

Judgment and order reversed, and cause remanded.

The following is the Department opinion above referred to:

SEARLS, C.—Appeal by defendant, the Southern Pacific Company (a corporation), from a judgment in favor of plaintiff for eight thousand nine hundred and sixty-five dollars, interest and costs, and from an order denying its motion for a new trial.

In February, 1891, the plaintiff, R. W. Pierce, shipped from Apopka, county of Orange, Florida, by the Florida Midland Railway, two carloads of orange trees, consigned to Gulick Bros., Riverside, California.

The first carload of trees was shipped February 19, 1891, and was received at New Orleans by the Southern Pacific Company February 25, 1891.

The other carload was shipped February 24, 1891, and was received by the Southern Pacific Company at New Orleans, March 1, 1891. Each carload was shipped under a bill of lading signed by plaintiff, R. W. Pierce, and by the agent of the Florida Midland Railway. A copy of the bills of lading was given to plaintiff. They were upon printed forms, with blanks, filled in with the names of the consignors, etc., in substance as follows: Marked and consigned to Gulick Bros., Riverside, California, one carload of orange trees, via Southern Pacific, 20,000 weight, car initialed, N. & L., No. —, etc. In the printed form it was provided that "the articles and packages" (contents unknown) were in "their nature perishable, fragile, or otherwise susceptible to damage," were shipped at a rate "lower than the regular tariff charges of said railway company and connections," and it was agreed that the shippers should "insure said Florida Midland Railway Company and all lines over which said shipment may pass, between points of shipment and destination, against claims by loss or damage incurred by reason of delay in transportation, or any other cause arising out of responsibility as master over its agents or servants (gross negligence excepted) incident to the

shipment, and 'that the actual invoice cost at point of shipment will be taken as measure of damages to govern settlements of any damages for which the carriers may be liable,' and that 'claims for loss, damage, or overcharge arising out of his shipment shall be presented to agents of delivery lines within one week after arrival of the property at its destination.' "

The rate of freightage on the trees was one dollar and ninety-seven and three-fourths cents per one hundred pounds. The Southern Pacific had a direct through line of railroad, owned or operated by it and by others in connection with it, from New Orleans, across Texas, New Mexico and Arizona, via El Paso and Yuma, to Colton, California.

When the freight reached New Orleans this line was broken by severe storms and washouts in Arizona, and was not likely to be available for the transportation of freight for some ·time. Under these circumstances, by order of its general agent, the trees in question were sent north through Texas to Denver, Colorado, thence to Ogden, Utah, thence over its Central Pacific road, etc., to Colton, California, where the cars were delivered to the Southern California Railway and by it hauled to Riverside, a distance of some six or eight miles, arriving at the latter point March 12 and March 16, respectively, 1891. While in transit by the northern route the trees were entirely destroyed by freezing.

Plaintiff avers in his complaint, among other things, in substance:

1. That there was no invoice of the cost of the trees; that they had been grown by him in Florida, and were shipped to California for sale; 2. That they were delivered to defendant at New Orleans to be shipped to Riverside by its direct and usual route; and, 3. That the defendant violated the contract by shipping through a northern climate, where, at that season of the year, intensely cold weather was common, and hence that defendant was guilty of gross negligence, etc., whereby the trees were frozen and destroyed.

These allegations are substantially denied by the answer. Defendant also set up the provisions of subdivision 1, of section 339 of the Code of Civil Procedure (two years), in bar of the action.

1. The contention of appellant is that the evidence showed,

without contradiction, that more than two years elapsed between the negligence complained of and the bringing of the suit, and hence that the finding of the court against defendant's plea of the statute is contrary to the evidence. We think this contention cannot be maintained.

Under our Code of Civil Procedure, section 458, the statute of limitations is sufficiently pleaded by alleging the bar and referring to the section and subdivision thereof (if so divided) relied upon. But the section continues, "if such allegation be controverted, the party pleading must establish, on the trial, the facts showing that the cause of action is so barred." The allegations of the answer are to be deemed controverted. (Code Civ. Proc., sec. 462.) It therefore devolved upon the defendant to establish the facts necessary to support the plea.

The complaint avers and the answer admits that defendant "is a corporation, organized under the laws of the state of Kentucky, and engaged in the business of operating a railroad as a common carrier of freight and passengers in the state of California and elsewhere, and was so engaged in the said business during all the time hereinafter mentioned."

A statute of this state, approved April 1, 1872, entitled "An act in relation to foreign corporations" (Stats. 1871-72, p. 826), requires all corporations created by the laws of any other state to designate some person residing in the county in which its principal place of business in this state is, upon whom process issued by authority of or under any law of this state may be served, and must file such designation in the office of the secretary of state, and a copy of such designation, duly certified, shall be evidence of such appointment.

The second section of the act provides that a failure to comply with such requirement shall preclude such corporation from "the benefit of the statutes of this state, limiting the time for the commencement of civil actions."

Section 3 of the act confers the right of corporations, organized under the laws of other states, which have complied with the foregoing requirement, to avail themselves of the benefits of our statutes of limitations.

It being admitted that defendant was a corporation organized under the laws of another state, compliance with the foregoing

statute became a necessary fact to be proven as a predicate to its right to avail itself of the benefit of the statute of limitations. This it failed to do, and hence the court did not err in its finding against its defense of the statute of limitations.

We may observe that the general rule is that foreign corporations, although having agents and transacting business in a state, come within the provisions of statutes limiting the time for the commencement of actions, and making a saving as against absent debtors.

It is only by comity that they are permitted to transact business in another state than that of their creation. They are citizens, so to speak, of the state of their creation, and are in contemplation of law absent from all other states than the one of their situs. (Wood on Limitations, 599.)

The statute, then, is not a limitation upon the right of foreign corporations to avail themselves of our statutes of limitations, but it confers that right, subject only to the condition prescribed.

2. Appellant contends that its general demurrer to the complaint upon the ground "that said complaint does not state facts sufficient to constitute a cause of action against this defendant" should have been sustained.

The complaint, as we think, in giving as it does a history of the whole transaction, including the contract made with the Florida Midland Company to ship the orange trees to Riverside, California, via the Southern Pacific Company: the transportation of the trees to New Orleans and delivery to defendant under the contract; its failure to forward them by its usual route, with a statement of the route by which defendant shipped the goods; the objections to such route, and the result of the deviation, etc., sets out a cause of action, either sufficient to hold defendant as for a breach of the contract, or, failing in that, under its common-law liability as a common carrier. It may well be that a demurrer to the complaint upon the ground of ambiguity or uncertainty would have been good, but no such objection was presented.

3. The contention of defendant that it cannot be held liable for the reasons: a. That the bill of lading described the packages as "contents unknown"; b. That it was not furnished with the bill of lading or with an opportunity to inspect the property

so as to inform itself of the character thereof or its liability to injury, cannot be maintained.

It is true the printed portion of the bills of lading uses the following expression: "The following articles and packages (contents unknown) marked and consigned as below, to wit." Then follows the description in each bill of lading in writing, which is in part as follows: "1 car orange trees."

Again, the evidence shows without contradiction that the cars were marked on the outside with the names and residence of the consignees, and "orange trees marked in big plain letters." In addition to this, the cars had open ventilators at each end, affording an opportunity to see and examine the contents. Defendant must, therefore, be held to have known the contents of the cars, or at least, to have had the means of knowledge at hand.

"It is the duty of the carrier to transport the goods by the usual direct route; and for any loss which a departure from such route may occasion to them he is liable." (Hutchinson on Carriers, sec. 312.)

It is said, however, that where there are two or more customary routes, and the carrier is left free to choose between them, he may take his choice without incurring increased liability, if there are no special reasons which make the route chosen unsafe. (*U. S. Express Co. v. Kountz*, 8 Wall. 342; *Maghee v. Camden etc. R. R. Co.*, 45 N. Y. 514; 6 Am. Rep. 124.)

Judging from the testimony, it can hardly be said that the route by which defendant shipped the goods in this case was one of its customary routes. With a through route of its own through Texas, New Mexico, and Arizona, it sent the goods many hundred miles to the north over roads operated by other companies, to meet its Central Pacific road at Ogden, in the state of Utah.

Conceding, however, that the route was a usual one, there were special reasons for not sending goods which were liable to destruction by frost over this northern route in winter, where defendant might reasonably have expected the result which followed.

When, therefore, defendant's through route via Fort Yuma was obstructed by stress of weather, it became its duty to hold the goods until that or some other safe avenue was opened, or

to notify the consignees or consignors and take their directions in the premises. The evidence shows that they did this with another car of like orange trees at a date a little earlier, and by direction of the consignees shipped them safely through by the Atlantic and Pacific Railroad. Where goods are marked in such a way as to indicate their character, or as to give notice to the carrier that their safety requires that they must be carried in a particular manner, such marks must not be disregarded. (Hutchinson on Carriers, sec. 310.)

In view of all the surrounding circumstances, we are of opinion that the defendant, by a failure to adopt one or the other of the foregoing courses, erred in judgment and became liable to plaintiff for the results which followed. The evidence fails to establish a case of gross or wanton negligence, but still does, we think, show a want of that extraordinary care imposed upon common carriers of goods.

4. A carrier is not relieved from responsibility under a contract that he shall not be responsible if he has been guilty of negligence. (*Railroad Co. v. Pratt,* 22 Wall. 123.)

It is contrary to public policy to permit the carrier to stipulate for exemption from the effects of the negligence of himself or his servants. (Hutchinson on Carriers, sec. 260, and cases there cited; *Railroad Co. v. Lockwood,* 17 Wall. 357; *Liverpool etc. S. S. Co. v. Phenix Ins. Co.,* 129 U. S. 397.)

5. As to the measure of damages. The court below awarded damages up to the full value of the goods at the point of destination, although the uncontradicted evidence tended to show that the value at the shipping point was about one-half of that given. It will be observed that the contract between the plaintiff and the Florida Midland Railway was for a through shipment of the goods to Riverside. We repeat that portion essential to the matter in hand:

"Whereas, said railway company has agreed that the cost of transportation . . . . shall not exceed . . . . $1.97¾ per 100 lbs., said rates being lower than the regular tariff charges of said railway company and connections;

"Now, therefore, said shippers, for themselves and consignees, do hereby insure said Florida Midland Railway Company and all lines over which said shipments may pass between points of

shipment and destination. . . . . It is further agreed that the actual invoice cost at point of shipment will be taken as measure of damages to govern settlement of any damages for which the carriers may be liable."

There is a wide distinction between a contract for exemption from liability in case of negligence which is usually held in derogation of public policy because tending to encourage negligence, and a contract fairly made whereby in consideration of a lower freightage the parties agree upon a fixed or determinate value to be placed upon the article to be shipped in case of its loss.

Hutchinson, at section 250, after discussing the question of total exemption in case of negligence, adds: "To be distinguished from these cases, however—though the distinction is not always observed——are those cases, obviously different, in which for the purpose of determining the shipper's liability for freight and the carrier's responsibility for damages, the value of the property is agreed upon." When such is the case, the supreme court of the United States and many of the state courts hold, to use the language of Mr. Justice Blatchford, in *Hart v. Pennsylvania R. R. Co.*, 112 U. S. 331: "That where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuation."

In the same case the learned justice further said: "The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value for the purpose of the contract of transportation between the parties to that contract. . . . . There is no

violation of public policy.  On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

We understand full well that there are many cases holding a contrary doctrine to that enunciated in *Hart v. Railroad, supra,* but we think that case which is cited as a leading one is founded upon reason and justice, and that the trend of judicial opinion is to the doctrine there enunciated. (See cases cited in *Hart v. Pennsylvania R. R. Co.,* 112 U. S. 342.)

Respondent objects, and urges that as the trees in question were cultivated by the plaintiff there was not and could not be any "invoice price."

The evident answer is that by the term "invoice price" was meant the cost or value of the property at the shipping point. That it had a fixed value at that point was attested by the evidence.   One of the definitions of an invoice is: "A writing made on behalf of an importer, specifying the merchandise imported, and its cost or value."   (Black's Law Dictionary.)

Plaintiff sued upon his special contract and averred that defendant received the goods thereunder.

Defendant averred in its answer "that it duly performed its duty under the contract set out in the complaint."

We think the demand for damages from defendant was in due time and sufficiently specific, in the absence of any demand by defendant of an invoice, to comply with the contract.

We think the court erred in overruling the objection of defendant to proof of the market value of the trees at Riverside, instead of confining the inquiry to the cost or value of the trees at the point of shipment in Florida as per contract, which with the freight paid was the true measure of damages.

For this error we recommend that the judgment and order appealed from be reversed and a new trial ordered.

Belcher, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial ordered.
                    Harrison, J., Van Fleet, J., McFarland, J.