H. E. WILSON & Co. *v.* ILLINOIS CENTRAL RAILROAD Co.[*]

(*Jackson.*   April Term, 1914.)

1. CARRIERS.   Transportation of Animals.   Damages.   Con
   tract Valuation.

Where a contract for the transportation of certain horses pro-
vided that it was agreed that the value of each horse should
not exceed $100, and that the carrier's liability for any loss or
damage should not exceed the actual cost at the point of ship-
ment, and in no event the contract valuation, the measure of
the owner's damage for injuries to the animals in transportation
by reason of the carrier's negligence was the amount each
animal had been depreciated in value by reason of its injuries
not in excess of the actual cost of the animal at the point of
shipment, and in no event in excess of the contract value.
(*Post,·pp.* 96-98.)

2. CARRIERS.   Transportation of Animals.   Cost at Shipping
   Point.

Where a contract for the transportation of animals provided that
· the carrier's liability should not exceed actual cost at the point
of shipment, the actual cost at that point was sufficiently proven
by showing the market value of the animals there, in the
absence of evidence that they were bought for less than their
market value.   (*Post, p.* 99.)

Case cited and approved:   Pierce v. Southern Pacific Co., 120
Cal., 156.

FROM SHELBY.

Appeal from the Circuit Court of Shelby. County.—
A. B. PITTMAN, Judge.

[*]On the question of limiting valuation of property as affecting
amount of recovery for loss by negligence, see note in 1 L. R. A.

BACON & STICKLEY, for appellant.

BIGGS & EVANS and C. N. PURCH, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The plaintiff shipped two car loads of horses from Chicago, Ill., to Memphis, Tenn., at the rate of $62 freight for each car. There was a special contract which contained the following stipulation:

"It is further expressly agreed that the value of the live stock to be transported under this contract does not exceed the following sums:

Each horse (gelding or mare) or pony, stallion,
mule or jack .................................$100 00
Each ox or bull ..........................   50 00
Each cow .................................   30 00
Each calf or pig .........................   10 00
Each sheep ...............................    3 00

"And the liability of the railroad company for any loss or damage for which it may be responsible shall not exceed the actual cost at the point of shipment, and in no event exceed the above valuation for each animal."

The plaintiffs introduced evidence tending to show the market value of the horses at Memphis, and the damage to each horse based upon that market value. The defendant objected on the ground that, under the provision of the contract above quoted, the actual cost at the point of shipment would control. This objection

was overruled. No testimony was offered to show the
invoice prices of the horses at Chicago, but the market
value of the animals at Chicago were shown. It was
proven that one of the horses in the shipment of Feb-
ruary 13, 1912, was worth, on the Memphis market,
$100, and the others in that shipment ranged in value,
on the Memphis market, from $115 to $175. A state-
ment showing the value of each horse on the Mem-
phis market was filed. In the other car—the shipment
of February 28th—one horse was valued at $90 on the
Memphis market, and the others from $100 to $135.
A statement was also filed showing the damages to
these horses and their value on the Memphis market.
The plaintiffs also testified that there was very little
difference between the Chicago and the Memphis mar-
kets.

The defendants introduced evidence tending to show
that the horses were damaged when they left Chicago,
and also that the shipments made in the present case
moved under a freight tariff duly filed with the inter-
state commerce commission, and posted and published
as required by law; that the bills of lading were is-
sued under that tariff, and conformed to it, and that
the rate from Chicago to Memphis thereunder was $62
per car. It was also shown that, if the shipments had
not been made under that tariff and under the special
valuation and provisions set forth in the bills of lad-
ing, the rate would have been 25 per cent. in excess of
$62 per car. The defendant also introduced evidence

Wilson & Co. v. Railroad.

tending to show that there was no rough handling of the horses.

The court charged the jury as follows:

"There is a contract of shipment in each case, one clause of which provides that, for the purpose of this law suit, the horses shall be considered as of value not exceeding $100, so that the jury, if they should find that injury was done to the horses, one or more of them, through the negligence of the railroad company, the jury will compute the injuries done to the horse or horses upon the basis that the horse or horses were worth what the evidence shows them to have been worth, not, however, to exceed $100 each. If the evidence should show that one horse which was injured was worth $150, the jury should treat that horse as being worth $100. But, if the evidence should show that a horse injured was worth $75, the jury should deal with him as though he were worth $75. In other words, you must consider the evidence as it shows injury to the horses in the light of the value shown by the evidence attached to the horses, unless that value exceeds $100; then you would limit the value of the horses to $100 in computing or estimating the damage that was done to them by any injury received.

"Now, you gentlemen have heard the lawyers debate here about whether or not you shall take the Chicago market, or the Memphis market, in arriving at the value of the horses. Witnesses have testified what the horses were worth in Memphis, and witnesses have testified to what they were worth in Chicago. The

Wilson & Co. v. Railroad.

court recalls that there is very little, if any, difference between the witnesses; but, however, that may be, I instruct you to take the Memphis values as the basis of your computation (that is, what was the horse worth in Memphis, and then what injury, if any, was done to him), and in that way reach your damages, if you find in favor of the plaintiff.''

The jury returned a verdict in favor of the plaintiffs for $400 for damages done to the animals in one car and for $250 as damages to the animals in the other car.

There were two cases, but they were tried together. From these judgments an appeal was prosecuted by the railway company to the court of civil appeals, and that court reversed the judgments and sent the cases back for a new trial.,

In disposing of the matter, the court of civil appeals used the following language:

''The assignments of error present but one question, and that is the construction and meaning of the valuation clause of the contracts under which the animals were shipped, and the amount for which the railroad company should be liable in case of loss or injury for which it was responsible.

''We are of opinion that, under a proper interpretation of the contracts, the railroad company was liable to the plaintiffs below for damages upon each injured animal for an amount not to exceed the actual cost of the animal at the point of shipment, and in no event could the plaintiff in error be held liable for damage

to each animal, in excess of the declared valuation of $100. In other words, if the animal cost, at the point of shipment a sum less than $100, the defendant in error could not recover damage in excess of said sum, and in no event could he recover for each animal an amount in excess of the declared value of $100.

"The measure of damages was not the difference between what the market value of the animals would have been in Memphis, if they had arrived in good condition, and their market value in their injured condition, as the jury were told by the trial judge in his instructions, but was the amount that each animal had been depreciated in value by reason of the injuries sustained, not in excess of the actual cost of the animal at the point of shipment, and in no event to exceed the declared value of $100.

"While it was competent for the defendant in error to introduce proof tending to show the market value of the animals at the point of destination, his recovery could not exceed the invoice price of the animals at the point of shipment, and if the animals cost more, at the point of shipment, than $100, the amount to be recovered by him could not exceed the sum of $100. He was entitled to recover, however, for the injury sustained to each animal, the amount that each animal had been depreciated in value by such injury, not in excess of the alternative amounts fixed in the contracts, without reference to what element of value remained in the animals."

130 Tenn.—7

We concur in the view expressed by the court of civil appeals in the language quoted, with a slight modification as follows:

We are of the opinion that the actual cost at the point of shipment was sufficiently shown by proving the market value at that point. *Pierce* v. *Southern Pacific Co.*, 120 Cal., 156, 47 Pac., 874, 52 Pac., 302, 40 L. R. A., 350.

In the case cited the provision of the contract was:

"It is further agreed that the actual invoice cost at the point of shipment will be taken as measure of damages to govern settlement of any damages for which the carriers may be liable."

In disposing of the matter the court said:

"The ordinary measure of damages for breach of a carrier's obligation to deliver freight is the value of the goods at the time and place of delivery (Civil Code, Sec. 3316); but this liability may be limited by special contract (Id., Sec. 2174); and here there was a special contract signed by the plaintiff making the invoice price at the point of shipment the measure of damages. It is true there was no invoice price actually made out and agreed upon at the time the trees were shipped; but this clause cannot for that reason be treated as meaningless and inoperative. It should receive a reasonable construction, and the most reasonable construction of which it is susceptible is that by invoice price was meant the actual value of the trees at the point of shipment when loaded and ready for transportation."

Wilson & Co. v. Railroad.

The shipment consisted of orange trees, billed from a point in Flordia to a point in California.

We are of the opinion that the market value at the point of shipment would be sufficient evidence of the actual cost at that point, in the absence of evidence showing that the goods were there purchased at less than the market value.

The judgment must be reversed in the present case because of error in the charge of the trial judge in fixing the market value at Memphis as the criterion. It is true he said in his charge there was no substantial difference between the market value at the two points, but we do not think it was proper for him to make such a statement to the jury. The evidence was, as already shown, that there was very little difference between the two markets; however, it appears from this there was a difference, and whatever it was the defendant was entitled to the benefit of it.

We are of the opinion that the court of civil appeals correctly construed the contract.

The result is the judgment of the court of civil appeals must be affirmed, and the cause remanded for a new trial.