## AMERICAN BANK & TRUST CO. v. HON.
### No. 4444.

Circuit Court of Appeals, Seventh Circuit.
March 28, 1931.

Harry W. Lippincott, Charles S. Deneen, and Roy Massena, all of Chicago, Ill., for appellant.

Louis J. Behan and William J. Corrigan, both of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

The State Commercial & Savings Bank and the Milwaukee-Western State Bank, hereinafter referred to respectively as savings bank and state bank, were Illinois banking corporations, and on June 5, 1928, the name of the state bank was changed to American Bank & Trust Company.

Appellee, on June 8, 1922, filed suit in the District Court against the savings bank, which resulted in a judgment by that court, on February 1, 1928, against the savings bank for $8,200. Execution was issued on that judgment, and was returned not satisfied in any part. In 1924, during the pendency of that action, proceedings were instituted in the circuit court of Cook county on relation of the auditor of public accounts of the state of Illinois against the savings bank, and a receiver was therein appointed who took possession of the property of the bank. On December 15, 1924, the state bank submitted to the receiver a proposal to purchase the assets and property of the savings bank, and as a consideration therefor it agreed to assume and to pay all liabilities of the savings bank, and to pay all costs of administration, receiver's fees and expenses, and attorneys' fees. By order of the court, of December 15, 1924, the receiver was authorized to accept such proposal and to comply with its terms, and thereupon an order was entered dissolving the savings bank. On January 6, 1925, the receiver reported to the court that he had complied with the proposal by assigning and delivering to the state bank all the property and assets of the savings bank except $32,600, which he retained as fees and expenses of the receiver and his attorneys. He further reported that the state bank had assumed the liabilities and obligations of the savings bank, and that, because of such assumption of liability, he did not give notice to the creditors of the savings bank to present their claims against it.

The court thereupon approved and confirmed the transaction in all respects.

The instant bill alleges that appellee's judgment is a liability assumed by the state bank, and that, because of the transfer of the assets to the state bank, appellee is unable to collect his judgment by legal process; that the savings bank has no assets subject to execution, by reason of which appellee has no adequate remedy at law. The prayer is that the American Bank & Trust Company, which is the present name of the state bank, be directed to pay appellee's judgment, with interest, costs, and attorneys' fees, and, failing to do so, that execution issue therefor.

Appellant filed its motion to dismiss the bill for the reason that appellee has an adequate remedy at law, and for the further reason that the judgment is void and unenforceable. This motion was overruled, and thereupon appellant filed its answer, in which it admitted the proceedings in the circuit court of Cook county against the savings bank, but alleged (1) that the liabilities of that bank which were assumed by the state bank, exclusive of appellee's claims, exceeded the value of the assets received by more than $58,-000, which appellant has paid; (2) that no claim of appellee was included in the statement of liabilities furnished to the state bank by the receiver; (3) that neither the state bank nor appellant has possession of any assets of the savings bank; (4) that the proceedings in the circuit court of Cook county were prosecuted in strict conformity with the Illinois statutes with relation to notice to creditors; (5) that appellee's judgment is void for the reason that it was entered after the savings bank had been dissolved by the decree of the circuit court of Cook county.

The District Court rendered judgment for appellee, directing appellant to pay appellee's judgment, with interest and costs, within twenty days, that execution issue, and that jurisdiction be reserved for the purpose of enforcing the decree by such proceedings as may be deemed proper; and it is from this decree that the present appeal is prosecuted.

It is contended by appellant that appellee's judgment against the savings bank, having been recovered after that bank had been dissolved by order of the Cook county circuit court, is void, and cannot form the basis of the instant action.

In passing upon this controversy, this court will be governed by the laws and declared public policy of Illinois in so far as they are not inconsistent with the basic law of the United States. New York Life Ins. Co. v. Cravens, 178 U. S. 389, 20 S. Ct. 962, 965, 44 L. Ed. 1116; McClain v. Provident Sav. Life Assurance Soc. (C. C. A.) 110 F. 80, 91; Bucher v. Cheshire Railroad Co., 125 U. S. 555, 8 S. Ct. 974, 31 L. Ed. 795; Blackwell v. Southern Pac. Co. (C. C.) 184 F. 489, 495.

In the case of New York Life Ins. Co. v. Cravens, supra, the court, referring to the meaning which the Supreme Court of Missouri had given to a statute of Missouri, said: "Our review is only invoked of that part of the opinion which decides that the Missouri statute is the law of the policy, and which annuls the provisions of the policy which contravene the statute. And even of this part our inquiry is limited. If we are bound by the interpretation of the statute we need not review the reasoning by which that interpretation was reached. And we think we are bound by it. * * * The interests of the state must be deemed to be expressed in its laws. The public policy of the state must be deemed to be authoritatively declared by its courts. Their evidence we cannot oppose by speculations or views of our own. * * * Against them no intention will be inferred or be permitted to be enforced."

In the case of McClain v. Provident Sav. Life Assurance Society, supra, the court said: "In extending the judicial power of the United States to controversies between citizens of different states, the only purpose indicated by the constitution was to provide another forum than that of the state, not another law than that of the state. In this case the court below was exercising a jurisdiction concurrent with that of the court of the state of Pennsylvania. It was administering the law of that state, and was as much bound by its statute and common law, and its declared public policies, as would be the state courts in a like case."

In the case of Blackwell v. Southern Pac. Co., supra, the court said: "* * * the matter for decision involving no federal question, the case being here merely by reason of diversity of citizenship, this court will adopt the declared policy of the state in which it sits, as found either in its statutes or the decisions of its highest tribunal."

The decree, by virtue of which appellant claims that the savings bank was completely dissolved, provides, among other things:

"Third: That upon the filing with this court of a report by said Receiver setting forth the execution of such deeds and the making of such transfer, conveyance and assignment by either said Bank and its officers or directors or said Master in Chancery, as the case may be, said State Commercial and Savings Bank be dissolved and all of its corporate rights, privileges and franchises declared forfeited, and terminated, and all of its powers extinguished and terminated forever."

"Fifth: That * * * the Receiver heretofore appointed * * * be, and he is hereby, authorized and directed * * * to institute and prosecute in his own name as such Receiver, or otherwise, all such suits and proceedings of every kind and nature, * * * as he may deem necessary, proper or advisable for the collection of moneys now due or which may hereafter become due said State Commercial and Savings Bank * * * and that * * * he be further authorized to defend all such suits as may have heretofore been or as may hereafter be brought against said State Commercial and Savings Bank or against himself as such Receiver."

It is not denied that the receiver made report to the court as contemplated in the third section, as above quoted.

In the case of Life Association v. Fassett, 102 Ill. 315, the court said: "It is not denied, or even questioned, that by the common law a corporation which has been dissolved absolutely, for all purposes whatsoever, stands upon the same footing as a dead person with respect to any power in the courts to enter a valid judgment against it. In the absence of any statutory provisions on the subject, the manifest logic and reason of the thing is the same in both cases."

The court, however, in the same opinion, used the following language: "In addition to the reasons already given why we hold the company to be still existing for the purposes of enforcing the claim of defendant in error, it may be further stated, that although the decree of the St. Louis circuit court, in terms, declares the corporation dissolved, yet by other portions of the decree, for the purpose of winding up the business of the company, paying its debts, etc., suits are authorized to be brought and defended in the name of the corporation, and it is also authorized, for the same purpose, to make, in its corporate name, all necessary conveyances of its property and effects. It is thus clear, when all the provisions of the decree are considered together, as they should be, the corporation is not absolutely extinguished for all purposes, but, on the contrary, is expressly kept alive, so far as its existence may be necessary, to collect and apply its assets to the payment of its debts (Ramsey v. Peoria Marine & Fire Ins. Co., 55 Ill. 311), and therefore it cannot with propriety be said to be civilly dead, to the extent of abating suits pending against it in a foreign State."

In the case of Commercial Loan & Trust Co. v. Mallers, 242 Ill. 50, 89 N. E. 661, 662, 134 Am. St. Rep. 306, 17 Ann. Cas. 224, the

trust company recovered a judgment against Mallers prior to December 2, 1898, on which last-named date the trust company went into voluntary liquidation. On January 6, 1909, an execution was issued to enforce the collection of the judgment, and levy was made. Mallers thereupon moved to quash the execution on the ground that the trust company had gone into liquidation prior to the issuing of the execution, and by reason of that fact the trust company was without legal capacity to sue out the execution. The court said: "It was held in Life Association of America v. Fassett, supra, that it is a part of the settled public policy of this state that upon the dissolution of a corporation, no matter how the dissolution may be effected, the corporation shall nevertheless be regarded as still existing for the purpose of settling up its affairs. In this case the suit was commenced while the defendant in error was a going corporation, and we see no reason why it should not be permitted to prosecute its suit to final judgment for the purpose of collecting its assets and settling up its affairs, even though it went into voluntary liquidation pending the litigation. * * * We can see no reason why a banking corporation should not be held to fall within the general public policy of the state which permits a corporation to do such acts as may be necessary to collect its debts and settle up its affairs after dissolution."

It seems quite clear under the Illinois decisions that a public policy has been adopted for this state in relation to the controversy before us which is at variance with appellant's contention, and that the rights of the claimant and the corporation in such cases are reciprocal.

It is contended, however, by appellant, that the Illinois decisions on this subject are based upon a provision of the general incorporation laws which are not applicable to banks, and that there is no such provision in the Illinois laws relating to the incorporation of banks, and for this reason it says the decisions are erroneous and not binding. This contention cannot be sustained, for, under the rule laid down in New York Life Insurance Co. v. Cravens, supra, we are bound by the interpretation of the statutes and public policies of Illinois as laid down by its Supreme Court, regardless of whether we think them right or wrong, in cases such as the instant one, where there are no federal questions presented.

It is further contended by appellant that in the proceedings to dissolve the savings bank it will be presumed that the auditor of public accounts did his duty, under paragraph 11, c. 16a (Cahill's Rev. St. Ill. 1929), relating to giving notice to claimants to present their claims to the receiver; and, inasmuch as appellee failed to present his claim to the receiver, he is precluded from enforcing it against appellant. It will be observed that the section referred to does not require the auditor of public accounts to give the notice, but it provides that he shall cause the notice to be given. In the proceeding for the appointment of the receiver and the dissolution of the savings bank, he was the relator, and in the decree the court specifically orders the receiver to give the notice as required by the section referred to. 'If the auditor requested this order for notice to the creditors to be placed in the decree, and if the receiver had given such notice, then the auditor would be considered as having complied with the statute in so far as notice to the creditors is concerned. It is quite apparent that some one suggested this order to the court, and we know of no one more likely to do so than the auditor in his capacity of relator, as the duty of causing notice to be given was enjoined upon him, if he had not already done it. The suit apparently was not contested, and it is quite evident that the complainant was the moving spirit, as the decree bears the "O. K." of all the defendants and of the receiver. The relator certainly knew the contents of the decree, and if he had already given the notice to creditors there was no necessity of having the notice duplicated. Neither he nor the court will be presumed to have done a useless thing, especially when it would have added considerable unnecessary expense to the estate. To have done so would have been a clear violation of the auditor's duty. It is admitted that the receiver gave no notice, and under the circumstances we think the trial court was right in concluding that the statute in that respect had not been complied with.

It is further contended by appellant that the decree is erroneous in holding that the purchase of the assets of the savings bank from the receiver by appellant's predecessor amounted to fraud in law as against appellee. It is evident that appellant misconstrues the court's finding, for it said the fraud upon appellee consisted "in receiving the property and assets of State Commercial & Savings Bank in the manner in which the same were received and transferred, 'as hereinbefore found, and by failing to pay the amount due to the complainant." The gist of the fraud as considered by the trial court was appellant's failure to comply with its agreement

after its purchase of the property at judicial sale. It cannot be considered as a collateral attack upon the sale itself, but it is an effort to enforce the terms of the sale. In other words, appellant has failed to pay the consideration for that which it received at judicial sale, and the fact that it received assets less in value by some $58,000 than the liabilities assumed cannot relieve it from its promise to pay. The sustaining of appellee's contention in this respect will not, as suggested by appellant, warrant every debtor who has executed a promissory note and fails to pay it being subjected to a suit in equity for fraud. Such a statement of facts does not fairly describe appellee's situation.

■■■ It is insisted by appellant that the decree is merely a personal judgment against it, and is not justified by the pleadings and evidence, and that appellee should not have been permitted to proceed in both law and equity, as his remedy was at law. The trial court answered this objection correctly in the following language, which we adopt:

"That the assets of a dissolved corporation will be protected in equity as a trust fund for creditors and stockholders, and that persons receiving them with notice of their character take them subject to such trust and to the decrees of a court of equity with respect thereto, is well recognized. Ruling Case Law, vol. 7, p. 740; Wheeler v. Pullman Iron and Steel Co., 143 Ill. 197, 32 N. E. 420, 17 L. R. A. 818; Curran v. State of Arkansas, 15 How. 304, 14 L. Ed. 705; Clokey, Adm'x, v. International, etc., Co., 28 Misc. Rep. 326, 59 N. Y. S. 878. Chapter 22, § 49, of Illinois Revised Statutes, is sufficiently broad in its terms to confer upon courts of equity this well-recognized jurisdiction. * * *

"It is urged that, inasmuch as defendant, in consideration of the conveyance of the bank's assets to it, promised to pay the debts of the bank, plaintiff, as a creditor of the latter, may sue at law; that such remedy is adequate, and that therefore a court of equity is without jurisdiction. Granted that such right exists upon the theory that a third person may sue upon a contract made for his benefit, it does not follow that the demonstrated right in equity to reach the trust funds is thereby defeated. One may have a right to sue at law a solvent mortgage debtor, but that right does not prevent him from also seeking to reach the property held in trust * * * to secure his debt."

From the facts surrounding this case we cannot say that the court erred in retaining

jurisdiction for the purpose of enforcing, if necessary and proper, its order and decree.

The decree of the District Court is affirmed.